432 P.2d 762 (1967)
C. B. GRANT et al., Plaintiffs in Error,
v.
The BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF MESA, State of Colorado, Defendants in Error.
No. 21762.
Supreme Court of Colorado, En Banc.
October 23, 1967.
Rehearing Denied November 13, 1967.
*763 Creamer & Creamer, Denver, for plaintiff in error.
Helman, Younge, Hockensmith & Stacey, Grand Junction, for defendant in error.
McWILLIAMS, Justice.
This is a zoning case and arises as the result of a declaratory judgment action brought by C. B. Grant and some fifty-one other persons, each of whom is a resident landowner in Mesa County, against the Board of County Commissioners of Mesa County, which body will hereinafter be referred to as the Board. By their action these several plaintiffs, who will hereinafter be referred to simply as the plaintiff, sought a declaration of their rights under a so-called county-wide zoning resolution adopted by the Board and purporting to cover most, though not all, of the unincorporated area of Mesa County. By this action the plaintiff, though seeking a declaratory judgment, from the standpoint of practical effect placed in issue the basic validity of the foregoing resolution. Upon trial of this matter the trial court upheld the zoning resolution in its entirety, save and except in one rather small particular. The particular instance in which the trial court purportedly invalidated a minor part of this comprehensive zoning resolution will later be considered in greater detail. Some general background information is now in order.
Prior to 1961 the Board, pursuant to the provisions of C.R.S. `53, 106-2-18, created some ten "district planning commissions," which covered somebut by no means allof the unincorporated area of Mesa County. Some, though apparently not all, of these district planning commissions had been functioning in the manner contemplated by the aforementioned statute. In any event, the County Planning Commission, hereinafter referred to as the Commission, had for some time prior to 1961 been considering proposed zoning which would cover all of the unincorporated areas of Mesa County. On April 18, 1961 the Commission unanimously approved "The Mesa County Zoning Resolution, Sixth and Final Draft, with Maps Attached," which document will hereinafter be referred to as the Resolution, and forwarded the same to the Board with the recommendation that it be acted upon favorably by the Board.
Digressing momentarily from our recitation of the facts, there is some dispute as to whether the Resolution recommended by the Commission covered all of the unincorporated area of Mesa County, or all of the unincorporated area of Mesa County except the areas within the Crestridge and Fruitvale Planning Districts. As concerns this particular matter, the Resolution as approved *764 by the Commission provided that all resolutions, or portions thereof, of the Board "inconsistent herewith" were thereby repealed to the extent of such inconsistency and the draft then went on to specifically provide that "inconsistent portions" of prior resolutions of the Board concerning eight of the ten District Planning Commissions above referred to, were thereby repealed. These eight districts were each referred to by name. Two of the ten District Planning Commissions theretofore created by the Board, however, were not mentioned by the Commission in its Resolution, namely the Crestridge and Fruitvale Planning Districts. Hence, the Board's position in the present litigation is that it was at all times the intent of the Commission to recommend proposed zoning regulations for all of the unincorporated areas of Mesa County, except in the Crestridge and Fruitvale Planning Districts, with each of these two district planning commissions continuing to act for its particular locality.
Laying aside for the moment this aspect of the case, on June 2, 1961 the Board held a "public hearing" on the proposed zoning Resolution, and on July 31, 1961 the Board then adopted the proposed Resolution. The Board, however, did make certain changes in the Resolution as recommended by the Commission. One such change concerned the location of fur farms, kennels, portable sawmills and veterinary buildings in an agricultural and forestry district. In this connection, the Resolution recommended by the Commission provided, among many other things, that in an "agricultural and forestry district," fur farms, kennels, portable sawmills and veterinary buildings were to be located at least 500 feet from the property line and also that such were to be at least 660 feet from any existing dwelling, school, or church. However, in this regard the Board, after hearing, eased the restriction by changing the particular provision so that such use had to be only 250 feet from the property line and only 300 feet from an existing dwelling, school or church.
Much of the present controversy centers around the public notice given by the Board of the public hearing which it proposed to hold, and which was actually held, in connection with the proposed Resolution. As concerns the requirement of public notice for a proposed hearing, C.R.S. '53, 106-2-11 provides as follows:

"Certification of planshearings. The county planning commission shall certify a copy of the plans for zoning all or any part of the unincorporated territory within the county, or any adopted part or amendment thereof, or addition thereto, to the board of county commissioners of the county. After receiving the certification of said zoning plans from the commission and before the adoption of any zoning resolutions, the board of county commissioners shall hold a public hearing thereon, the time and place of which at least thirty days' notice shall be given by one publication in a newspaper of general circulation in the county. Such notice shall state the place at which the text and maps so certified by the county planning commission may be examined. * * *"
On April 29, 1961 the following public notice appeared in the Grand Junction Sentinel, a local Grand Junction newspaper:
"Notice is hereby given that the Board of County Commissioners, County of Mesa, State of Colorado, will conduct a public hearing at the District Court Room, Mesa County Court House, Grand Junction, Colorado, on June 2nd, 1961, commencing at 9:00 A.M. and continuing until all interested parties have been heard. At the said hearing, consideration will be given to a proposed Mesa County Comprehensive Zoning Resolution which, if adopted, will affect the unincorporated areas of the County, except the areas within Fruitvale and Crestridge Planning Districts. The text of the proposed resolution, together with all maps of the proposed zoning areas and classifications, *765 as certified by the Board of County Commissioners by the County Planning Commission, will be available for examination at the Planning Commission Office, Room 200-A, Mesa County Court House Annex, Grand Junction, Colorado, from the hours of 9:00 A.M. until 4:30 P.M., Mondays through Fridays from April 28th, 1961 through May 31st, 1961, holidays excepted.
"All parties desiring to be heard at the hearing shall contact the County Attorney, Thomas K. Younge at Chapel 2-2645 to arrange for a specific time to appear.
 Arthur J. Jeans, Chairman
 Board of County Commissioners
 Mesa County."
The dispute over the legal sufficiency of the aforementioned public notice stems from the fact that in the same edition of the Grand Junction Sentinel appeared another public notice, identical in all respects with the notice set forth above, except that this "other" or "second" notice stated that the public hearing would be held on May 31, 1961.
The foregoing recital of facts is deemed sufficient to an understanding of the various issues presented by the instant writ of error. As already indicated, the trial court entered judgment upholding the zoning Resolution adopted by the Board, save and except in the one particular. As concerns the "change" made by the Board in the Resolution relating to the location of fur farms, kennels, portable sawmills and veterinary buildings, the trial court "invalidated" the change thus made. The trial court held, in this regard, that the "change" was a substantial one, and under the applicable statute should have been referred back to the Commission. By this writ of error, then, the plaintiff seeks reversal of the judgment thus entered, and by way of so-called cross assignment of error, the Board seeks a reversal of that portion of the judgment of the trial court which invalidated the change the Board made in the Commission's Resolution regarding the location of fur farms, kennels, portable sawmills and veterinary buildings in an agricultural and forestry district.
The plaintiff initially contends that the entire zoning Resolution adopted by the Board is a nullity because of the allegedly "defective notice" given by the Board of the public hearing which it proposed to hold, and did hold, on June 2nd, 1961. As noted above, there were two notices concerning the proposed public hearing which appeared in the same edition of the Grand Junction Sentinel. Just how this occurred is not clear, but that it did occur is undisputed. The record before us discloses that some twenty-five persons appeared at the appointed place and hour of the day of May 31, 1961 and learned that no hearing was to be held on that particular day.
And on June 2, 1961 a public hearing was indeed held by the Board. This hearing was apparently very well attended, with some sixty persons testifying as to their personal preferences in regard to the proposed zoning resolution. From a reading of the record as thus made before the Board, this was apparently a cause celebre in Mesa County, with the citizenry being about equally divided on the subject, and in many instances those testifying before the Board tended to be rather vehement in their position, regardless of what their particular stand might be.
Notwithstanding the fact, then, that a true New England style public hearing was actually held by the Board before it considered the proposed zoning Resolution, the plaintiff contends that because of "defective notice" the entire Resolution must fall. In thus contending plaintiff relies essentially upon Holly Development, Inc. v. Board of County Commissioners of Arapahoe County, 140 Colo. 95, 342 P.2d 1032.
In the Holly case we held that the notice was defective primarily because it failed to apprise the reading public that the public hearing related to a proposed zoning change. Such is not the precise problem now before us. Here the so-called "first" *766 notice did apprise one and all that the proposed hearing related to "a proposed Mesa County Comprehensive Zoning Resolution which, if adopted, will affect the unincorporated areas of the County except the areas within Fruitvale and Crestridge Planning Districts."
In the instant case, then, the notice wherein the hearing date was said to be June 2, 1961 was a notice which substantially met the requirements laid down in the Holly case. Our problem, therefore, is whether this "valid" notice is vitiated because of the "other" notice which incorrectly listed the date of the hearing as May 31, 1961, two days before the true date set for the hearing. From the practical standpoint, it is deemed to be of some importance that the hearing was not held on the earlier of the two different dates mentioned in the two notices. Hence, all who appeared for the "first" meeting necessarily learned that the earlier date of May 31, 1961 was incorrect, and presumably, if they made any inquiry, also ascertained that the actual hearing would be held on June 2, 1961. At least it is difficult to believe that anyone who appeared for the hearing on May 31, 1961 did not at that time not only learn that there was to be no hearing on that particular date, but must also have learned when the hearing was to be actually held.
Also, there is nothing in the record which would indicate that any person was actually mislead and thereby precluded from appearing at the public hearing. And as already noted, the public hearing was exceedingly well attended with about one-half of those persons present opposingand ofttimes bitterly sothe proposed Resolution, with the remaining one-half testifying in support of the Resolution. Certainly, then, the Board was pretty well apprised as to the reaction of the general public to the proposed zoning Resolution. We therefore conclude that the notice in the instant case was not defective and that the "second" or "other" notice under the circumstances did not neutralize the "valid" first notice.
Plaintiff next contends that the Board made many "substantial" changes in the Resolution as certified to it by the Commission and that because the Board failed to thereafter resubmit these changes to the Commission the "subject resolution is void," presumably in its entirety. As concerns the necessity for resubmission to the Commission of any "change" made by the Board, C.R.S. `53, 106-2-11 provides as follows:
"No substantial change in or departure from the text or map so certified by the county planning commission shall be made unless such change or departure be first submitted to the certifying county planning commission for its approval, disapproval or suggestions, and if disapproved, shall receive the favorable vote of not less than a majority of the entire membership of the board of county commissioners. * * *"
The aforementioned statute would appear to require that, if there be a "substantial change," only the "substantial change," and not the entire zoning resolution, be resubmitted to the Commission. We recognize that a "substantial change" could conceivably be of such a far-reaching and fundamental nature as to alter the basic overall zoning policy enunciated in a particular zoning resolution, and thereby necessitate a resubmission of the Resolution in its entirety to the Commission. But such is not the situation in the instant case.
As concerns these allegedly "substantial changes" plaintiff argues that one very substantial change is that, from the geographical standpoint, the Board's Resolution covered all the unincorporated area of Mesa County, except the area in the Crestridge and Fruitvale Planning Districts; whereas the Commission's Resolution recommended zoning regulation for all of the unincorporated area of Mesa County, including the area within the Crestridge and Fruitvale Planning Districts. It is claimed that this change is so substantial and so fundamental in nature that the entire Resolution should have been resubmitted to the Commission. We do not agree with even the initial premise *767 that there was any change, be it substantial or not, between the Resolution recommended by the Commission and the Resolution adopted by the Board. As indicated above, we believe that the intent of both the Board and the Commission was to zone all of the unincorporated areas of Mesa County, except the Crestridge and Fruitvale Planning Districts, which were already under zoning regulations.
We have examined all the other various and sundry items which counsel contends represent substantial changes from the Resolution submitted to the Board by the Commission, and conclude that although each does no doubt constitute a "change," none is so substantial in nature that it would have to be resubmitted to the Commission. If we are going to be technical in this matter as to just what constitutes a substantial change, then we may very well be placing the Board on the sharp horns of a real dilemma. On the one hand, if virtually every change made by the Board is to be deemed by us to be a substantial change, then the Board might well be resubmitting ad infinitum to the Commission. And on the other hand, if the Board wants to avoid constant "resubmitting" to the Commission, about all it could do would be to approve a proposed resolution in the exact form as such is submitted to it by the Commission. We do not believe that this was the intent of the legislature. Only substantial changes need be resubmitted. Our attention has been directed to no Colorado case defining the phrase "substantial change" as used in the aforementioned statute. Cases from other jurisdictions bearing on this particular subject are McGee v. City of Cocoa, 168 So. 2d 766 (Fla.Ct.App.); Manning v. Borough of Paramus, 37 N.J.Super. 574, 118 A.2d 60; Suffolk Pines, Inc. v. Harwood, 14 Misc.2d 826, 178 N.Y.S.2d 732; aff'd 10 A.D.2d 867, 199 N.Y.S.2d 726; and In re Appeal of Hawcrest Association, 399 Pa. 84, 160 A.2d 240.
By way of cross assignment of error the Board contends that the trial court erred in that portion of its judgment which purported to "invalidate" the provisions of the Board's Resolution relating to the location of fur farms, kennels, portable sawmills and veterinary buildings in an agricultural and forestry district.
It should be pointed out that this particular "change" was cited by the plaintiff as one of the many changes made by the Board whichbecause none of the changes had been resubmitted to the Commissioninvalidated the entire zoning Resolution. There is nothing to indicate that this plaintiff makes complaint about the change, as such, concerning the location of fur farms, kennels, portable sawmills and veterinary buildings in an agricultural or forestry district. Actually, plaintiff has benefited from the particular change as he has greater freedom in the use of his property by virtue of the easing of this particular recommendation as theretofore made by the Commission.
Rather, plaintiff argues that this is a change of such import as to require that the entire matter be resubmitted to the Commission, and that the failure to thus resubmit "voids" the entire resolution. With this contention we do not agree. The "change" thus made by the Board must be viewed in context. The Resolution proposed by the Commission was most comprehensive and consisted of some fifty-one typewritten pages. It proposed numerous classifications for zoning districts, including five classes of residential districts, tourist districts, shopping center districts, business districts, electronic and research districts, commercial districts, industrial districts and an agricultural and forestry district. It was in this setting that the Board eased the restrictions relating to the location of fur farms, kennels, portable sawmills and veterinary buildings in an agricultural and forestry district. Suffice it to say, we simply do not view this change as being so fundamental in nature as to in any wise materially alter the basic overall zoning policy contained in the Resolution of the Board, and such change in our view did not necessitate a resubmission of the matter *768 to the Commission. In this setting, then, it was improper for the trial court to purport to "invalidate" the one section of the Board's Resolution relating to the location of fur farms, kennels, portable sawmills and veterinary buildings in an agricultural and forestry district, on the ground that this particular provision, but not the entire Resolution, should have been sent back to the Commission. The Board admittedly did "change" the Commission's recommendation in this regard; but such does not justify the contention of the plaintiff that because of this particular change the Resolution of the Board is invalid inasmuch as the matter was not resubmitted to the Commission for its further consideration.
Accordingly, that portion of the judgment which purports to declare invalid the section of the zoning Resolution for County of Mesa relating to the location in an agricultural and forestry district of fur farms, kennels, portable sawmills and veterinary buildings is reversed and the cause remanded with the direction that said portion of the judgment be vacated. Otherwise, the judgment entered by the trial court is affirmed.