242 So.2d 210 (1970)
CITY OF CORAL GABLES, a Municipal Corporation of Florida, and Dr. John T. MacDonald Foundation, a Florida Corporation, Appellants,
v.
Robert H. DESCHAMPS and Josette Deschamps, His Wife, and Lola Kramer, Jointly and Severally, Appellees.
No. 70-66.
District Court of Appeal of Florida, Third District.
December 4, 1970.
Rehearing Denied January 15, 1971.
Charles H. Spooner, City Atty., and Robert D. Zahner, Asst. City Atty., Mershon, Sawyer, Johnston, Dunwody & Cole and Thomas S. Trantham, Jr., Miami, for appellants.
Michael H. Kramer and Edward D. Cowart, Miami, for appellees.
Before PEARSON, C.J., HENDRY, J., and NATHAN, RAYMOND G., Associate Judge.
PER CURIAM.
This is an appeal from an order of the circuit court of Dade County holding, inter alia, invalid and void, an ordinance and resolution of the appellant, City of Coral Gables, Florida.
Appellant, Dr. John T. MacDonald Foundation (Doctors Hospital), made application for a change of zoning of 1.90 acres of land immediately adjacent to the hospital for expansion of its present facilities to include construction of a seven-story addition partially on its present site and also on the land sought to be rezoned. At the time of said application, the property sought to be rezoned was zoned for university use.
Resolution No. 14025 was a resolution to permit a seven-story addition to the existing hospital facility and Ordinance No. 1690 was for an amendment to the zoning code.
Legal notice of hearing was published and advised the proposed change of zoning on the 1.90 acres; however, no mention was made in said notice of the request for a seven-story building to be located on the subject property and the adjoining hospital facility and property.
*211 The appellees, plaintiffs below, filed two suits, subsequently consolidated, petitioning the circuit court of Dade County for writ of certiorari and alternative complaint for declaratory decree and injunctive relief seeking to declare invalid and void Ordinance No. 1690 and Resolution No. 14025 of the City of Coral Gables. Thereafter, appellees amended their petition to a complaint for a declaratory decree and for other equitable relief. The trial court entered final judgment declaring the ordinance and resolution in question invalid and void upon the sole ground that at the time of their enactment, the City of Coral Gables had failed to establish by ordinance proper standards, guidelines and/or qualifications for the enactment of ordinances and resolutions of such nature. From the final judgment, this appeal by appellants, defendants below, and cross-appeal by appellees, plaintiffs below, followed.
Appellants' first point is whether the trial court erred in declaring City of Coral Gables Ordinance No. 1690 and City of Coral Gables Resolution No. 14025 invalid and void on the sole ground that the City failed to establish by ordinance proper standards, guidelines and/or qualifications for the enactment of ordinances and resolutions.
This court, in City of Coral Gables v. Sakolsky, Fla.App. 1968, 215 So.2d 329, stated that questions of zoning policy, of benefit or detriment, of what is good or bad for the city and the public, involve an exercise of police power and are essentially matters within the legislative orbit of the city. City of Miami Beach v. Greater Miami Hebrew Academy, Fla.App. 1959, 108 So.2d 50; Josephson v. Autrey, Fla. 1957, 96 So.2d 784. The city commission, as the legislative body of the City of Coral Gables, is granted full power and authority by the legislature to enact zoning regulations under Section 8(34) of its Charter.[1] The Supreme Court of Florida, in North Bay Village v. Blackwell, Fla. 1956, 88 So.2d 524, in an opinion by the late Justice Thornal held:
"In order to settle the law on this subject in the interest of consistency and for the future guidance of the Bar, as well as municipalities, we deem it advisable, therefore to state the position of the court unequivocally on the problem at hand. The development of zoning laws and zoning procedures in recent years had produced some of these inconsistencies in the decisions of various courts. This is so for the reason that in the early days of municipal zoning, there were those who doubted the authority of municipalities to exercise their police power to the extent of regulating the use of private property. Over a period of years there had been a gradual development of the rules governing the municipal legislative bodies in the exercise of this power. As our cities grew and situations relating to sound zoning practices became almost daily problems of municipal government, it was only natural that some of the earlier conclusions of the courts would likewise develop to meet the requirements of changing circumstances and new conditions.

*212 "With reference to the problem before us there now seems to be little doubt that a zoning ordinance must prescribe definite standards for the guidance and control of the building inspector, the zoning officials and indeed the municipal council, when by the ordinance it reserves to itself various administrative zoning powers. An ordinance whereby the city council delegates to itself the arbitrary and unfettered authority to decide where and how a particular structure shall be built or where located without at the same time setting up reasonable standards which would be applicable alike to all property owners similarly conditioned, cannot be permitted to stand as a valid municipal enactment.
"The rule is well stated in Yokley on Zoning Law and Practice, Vol. 1, Sec. 62, as follows: `The general rule is that a zoning ordinance must prescribe definite standards in that neither the city council, the board of appeals created by ordinance or statute, nor the building inspector are properly vested with discretionary rights in granting building permits or variances in exception to the zoning ordinance unless there has been established a definite standard to guide them in the exercise of such powers.'"
The record before this Court is devoid of any standards, guidelines or qualifications for the enactment of ordinances and resolutions and furthermore appellants do not contend that such standards and guidelines exist.
The appellants contend that the application of Doctors Hospital was merely the extension of an already existing use and that these guidelines were not necessary. The record reveals that the property sought to be rezoned is not being used as a hospital, but is presently zoned for university use. It should also be noted that the resolution sought to be declared valid permits "a seven (7) story addition to the existing hospital building, as shown on submitted plans; located on the Northeast 1.90 acres of Tract 2 * * *," however, the legal notice published by the appellant, City of Coral Gables, does not mention anything pertaining to the construction of a seven-story hospital, nor is the hospital located on the land sought to be rezoned. The law is well settled that the notice must adequately inform as to what changes are proposed, and the actual change must conform substantially to the proposed changes in the notice. Williams v. City of North Miami, Fla.App. 1968, 213 So.2d 5; McGee v. City of Cocoa, Fla.App. 1964, 168 So.2d 766.
Therefore, the trial judge was correct in his ruling and is affirmed.
Appellant's second contention is that the proper method for judicial review of zoning ordinances and resolutions enacted by the City of Coral Gables is by certiorari. As noted above, the appellees petitioned the circuit court of Dade County for writ of certiorari and thereafter amended their petitions to a complaint for declaratory decree and for other equitable relief. Over objection of appellants, the trial court, on the 14th day of October, 1969, held that the appellees-plaintiffs are "not limited to review by strict certiorari, and the plaintiff's complaint, as amended, states a cause of action." The appellant, City of Coral Gables, received its authority to control zoning under its Charter, supra, and enacting its zoning code, provided the method of appeal from both the decisions of the planning and zoning board and appeals from its own decisions. Coral Gables Zoning Code, Sec. 12.11, reads as follows:
"Any appeal from the decision of the City Commission may be taken by any person or persons, jointly or severally, aggrieved by any decision of the City Commission, by presenting to the Circuit Court a petition for issuance of a writ of certiorari, duly certified, setting forth that such decision is illegal, in whole or in part, certifying the grounds of the illegality, provided same is done in the manner and within the time provided by Florida Appellate Rules."
*213 The record indicates that the City of Coral Gables has never elected to proceed under Chapter 176, Florida Statutes, F.S.A. In Thompson v. City of Miami, Fla. 1964, 167 So.2d 841, the Supreme Court of Florida held that an assault on the validity of a zoning ordinance may be accomplished by suit in equity rather than statutory certiorari. Cf. Sec. 176.16, Florida Statutes, F.S.A.; Carlson v. Town of West Miami, Fla.App. 1960, 118 So.2d 835; Village of Pembroke Pines v. Zitreen, Fla. App. 1962, 143 So.2d 660.
We have carefully considered the remaining points on appeal made by cross-appellants and find them to be without merit.
For the foregoing reasons, the judgment of the trial court is hereby affirmed.
HENDRY, Judge (dissenting).
I respectfully dissent from the majority opinion. I would hold that there is no requirement for standards where the city council itself acts as the zoning authority and does not delegate its legislative authority to an independent administrative agency. Furthermore, even if standards were required in such a case, I would find that proper standards are present.

I.
In this case there is no administrative agency as delegatee of legislative powers. Rather, the legislative body chose to reserve to itself the legislative function of zoning. Professor Davis explains the error into which the respected Michigan court fell in Osius v. City of St. Clair Shores, 344 Mich. 693, 75 N.W.2d 25, 27, 58 A.L.R. 2d 1079 (1956):
"* * * A Michigan statute authorized a city council to enact a comprehensive zoning ordinance. The council of the City of St. Clair Shores enacted such an ordinance, but provided that the council itself would serve as the zoning board. Exercising original jurisdiction under the ordinance, the city council, * * * [acted]. The court began its opinion with the obviously false statement: `There is no doubt that a legislative body may not delegate to another its law-making powers.' * * * [Which means here] that the city council cannot delegate law-making power to the city council. The court did not say why. But the court went on to acknowledge that some power could be conferred, `provided, however, that the standards prescribed for guidance are as reasonably precise as the subject-matter requires or permits.' This means that the city council, when it sits without the facts of the particular case before it, must provide some guidance so that the city council, when it sits with the facts before it, will have some help in making the decision. Otherwise the delegation from the city council to the city council will be unlawful * * (1 Davis, Administrative Law Treatise, § 2.09)."
Certainly favoritism must be prevented. However, the legal fiction of requiring adequate standards provides excessive rigidity or vagueness. An emphasis upon adequate procedural safeguards would provide more protection than statutory guidelines.
Recognizing the fallacy of premise underlying the majority rule, I would adopt the minority rule which permits the retention of permit-issuing power by the legislative body without express standards, where such power is exercised reasonably with adequate procedural safeguards and the decision is sustained by substantial evidence. Gorieb v. Fox (1927), 274 U.S. 603, 607, 47 S.Ct. 675, 71 L.Ed. 1228, 1230-1231, aff'ing 145 Va. 544, 134 S.E. 914; Larkin v. Schwab, 242 N.Y. 330, 334, 151 N.E. 637, 638; Matter of Lemir Realty Corp., 11 N.Y.2d 20, 226 N.Y.S.2d 374, 181 N.E.2d 407, 409; Church v. Bouyea, 246 App.Div. 109, 285 N.Y.S. 7, 10, aff'd. 272 N.Y. 422, 3 N.E.2d 851. Florida, in accord with the majority of courts, holds that authority to issue special permits must be controlled by adequate statutory standards, whether it is vested in an administrative *214 body or retained by the legislature. North Bay Village v. Blackwell, Fla., 88 So.2d 524, 526, following Drexel v. City of Miami Beach, Fla., 64 So.2d 317, and receding from Harz v. Paxton, 97 Fla. 154, 120 So. 3, and City of Miami Beach v. State ex rel. Ross, 141 Fla. 407, 193 So. 543; see: Rathkopf, the Law of Zoning and Planning, Ch. 54, "Conditional Uses or Special Exception Permits," esp. 54-34 et seq.; Anderson, American Law of Zoning, Ch. 15, "Administrative Relief from Zoning Regulations: Special Permits," esp. § 15.10.
Applying the minority rule, I would find that the Coral Gables Municipal Charter, Ch. 13972, Special Acts, Laws of Florida, 1929, as an enabling statute is sufficient to vest power to issue permits in the city council. See: Matter of Greenpoint Sav. Bank v. Bd. of Zoning Appeals of Town of Hempstead, 281 N.Y. 534, 24 N.E.2d 319, app. dism'd 309 U.S. 633, 60 S.Ct. 719, 84 L.Ed. 990.

II.
Alternately, and on pain of rendering even more meaningless the legal fiction of adequate standards, I would find adequate standards here. I believe the original grant of power, set forth in the footnote,[1] establishes sufficient standards, particularly the last phrase. Coral Gables Municipal Charter, Ch. 13972, Special Acts. Laws of Florida, 1929, § 8(34). Standards may be found in the Code of the City of Coral Gables, Comprehensive Zoning Code, for example § 12.08:
"Exceptions from the terms of this code, not involving a change of Use, or a change of minimum building area requirements of more than five (5%) per cent of specifically designated property, may be authorized or permitted by the City Commission by resolution from time to time as it may deem necessary or proper."
No citations are necessary to support the rule that delegations using the words "necessary" or "proper" or "reasonable" are sufficient to satisfy the constitutional requirements of due process and separation of powers. See 1 Davis, Administrative Law Treatise, Ch. 2.

III.
If the majority is correct, and the action by the city council was administrative in character and not legislative, then certiorari is authorized. Moreover, where the city council acted legislatively in prescribing the exclusive method of judicial review, then the separation of powers would require a compelling reason before allowing any other means of review. No such compelling reason was advanced here.
Furthermore, due respect for the city council's familiarity with the subject-matter (zoning of the hospital) would demand that judicial review, whether by certiorari or by suit for declaratory judgment would be confined to a review of the record before the administrative body. This is the rationale behind the substantial evidence rule, which I would urge should be the boundary of judicial review of the proceedings below. I believe that the majority of the *215 court has departed from this limitation and ignored the substantial evidence rule.
In conclusion, I would reverse and permit the zoning of the hospital addition, holding that: (1) there is no requirement for standards where the city council acts legislatively as the zoning authority (and does not delegate such legislative authority to an independent administrative board); (2) whether adequate standards are required or not for the issuance of special permits, the enabling act and zoning code here contain sufficient statutory standards; (3) the limits of judicial review of zoning decisions should be the substantial evidence rule, so that a party aggrieved cannot lessen his burden of proof by casting his attack in terms of declaratory judgment rather than legislatively authorized certiorari.
NOTES
[1] City Charter  Section 8  General Powers (34) Zoning 

"In the interest of the public health, safety, order, convenience, comfort, prosperity or general welfare, to adopt a plan or plans for the districting or zoning of the City for the purpose of regulating the location of trades, industries, apartment houses, dwellings and other use of property, or for the purpose of regulating the height of buildings and other structures; or the area and dimensions of lots or yards in connection with buildings or other structures; and for the purpose of regulating the alignments of buildings or other structures near street frontages; and to regulate the type, appearance, exterior decoration and coloring of any buildings located in any subdivision of said City, to conform to any building conditions, covenants or restrictions, contained in deeds in the chain of title to the respective lot or lots in said subdivision upon which such buildings may be erected, and to any general plan (thereby created or evidenced) for harmonious and artistic architectural construction of buildings in said subdivision."
[1] "Zoning. In the interest of the public health, safety, order, convenience, comfort, prosperity or general welfare, to adopt a plan or plans for the districting or zoning of the City for the purpose of regulating the location of trades, industries, apartment houses, dwellings and other use of property, or for the purpose of regulating the height of buildings and other structures; or the area and dimensions of lots or yards in connection with buildings or other structures; and for the purpose of regulating the alignments of buildings or other structures near street frontages; and to regulate the type, appearance, exterior decoration and coloring of any buildings located in any subdivision of said City, to conform to any building conditions, covenants or restrictions, contained in deeds in the chain of title to the respective lot or lots in said subdivision upon which such buildings may be erected, and to any general plan (thereby created or evidenced) for harmonious and artistic architectural construction of buildings in said subdivision."